1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  KYLE F. WALDINGER (CABN 298752)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6830
7       E-mail:  Kyle.Waldinger@usdoj.gov

8  Attorneys for the United States of America

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12 UNITED STATES OF AMERICA,          )   NO. CR 18-0418 VC
                                      )
13          Plaintiff,                )   **UNITED STATES' SENTENCING REPLY**
                                      )
14     v.                             )
                                      )
15 WILLIAM F. GARLOCK,                )   Sent. Date:  December 17, 2019
                                      )   Time:        10:30 a.m.
16          Defendant.                )   Court:       Hon. Vince Chhabria
                                      )
17 _____

18         The defendant William Garlock is scheduled to be sentenced on December 17, 2019.  The parties

19 have each filed their sentencing memoranda.  The government now files this Sentencing Reply (1) to

20 advise the Court that two additional creditors have filed VISs seeking restitution (which changes the

21 government's proposed restitution order) and (2) to address several points raised by the defendant.

22                **Two New VISs and New Restitution Calculation**

23         Two more of the defendant's creditors in his bankruptcy case – Leonard Sklar and Premier

24 Financial Services LLC – provided the United States with VISs on December 9 and December 11, 2019,

25 respectively.  The United States has incorporated these claims into its restitution calculations.  It now

26 presents the Court with these revised restitution calculations, based on the presumption that the Court

27 will accept its recommendation that the Court find that Garlock fraudulently concealed a total of $1.5

28 million in assets and that this is the appropriate figure to use for purposes of calculating the total amount

of the restitution judgment:

| VICTIM NAME | LOSSES (CLAIMED BY CREDITOR OR ADJUSTED BY USA) | % SHARE OF RESTITUTION | RESTITUTION AMOUNT |
|---|---|---|---|
| 200 Lombard, LLC | $183,910.28 | 1.0946% | $16,418.52 |
| Carolyn Bechtel | $2,000,000.00 | 11.9033% | $178,549.20 |
| George & Michael Berberich | $222,357.00 | 1.3234% | $19,850.83 |
| Daniel & Christy Brune | $1,332,571.15 | 7.9310% | $118,964.76 |
| Joelle Calton | $226,584.00 | 1.3485% | $20,228.20 |
| Robert Conklin | $200,000.00 | 1.1903% | $17,854.92 |
| Ronald & Diana Conklin | $250,000.00 | 1.4879% | $22,318.65 |
| Faria Enterprises LLC (Lisa Faria) | $934,936.71 | 5.5644% | $83,466.10 |
| Forum Design LTD (Warner H. Schmalz) | $96,000.00 | 0.5714% | $8,570.36 |
| Global VC Group, LLC | $1,925,000.00 | 11.4569% | $171,853.61 |
| Clarke H. Hutchings Living Trust | $1,091,139.24 | 6.4941% | $97,411.02 |
| Jocer Enterprises. Inc. (dba Castlebrook Barns) | $130,115.49 | 0.7744% | $11,616.01 |
| Kevco Design Inc. | $8,493.78 | 0.0506% | $758.28 |
| Ledesma Ventures, LLC (Andrew Litton) | $550,000.00 | 3.2734% | $49,101.03 |
| Peter & Leslie Mathews Trust, Ryan & Peter Mathews Irrevocable  Trust | $3,000,000.00 | 17.8549% | $267,823.81 |
| Ella Thomas | $816,273.97 | 4.8582% | $72,872.53 |
| Woodside Priority LLC | $3,299,877.20 | 19.6397% | $294,595.22 |
| Cecily Randolph | $249,750.00 | 1.4864% | $22,296.33 |
| UTA DTD 09/20/09 FBO Amir Badrudin Kanji and Zainab Jenny Kanji | $126,582.28 | 0.7534% | $11,300.58 |
| Leonard Sklar | $150,000.00 | 0.8927% | $13,391.19 |
| Premier Financial Services, LLC | $8,500.00 | 0.0506% | $758.83 |
| | $16,802,091.10 | 100.0000% | $1,500,000.00 |

### Other Restitution Issues

The defendant states that he does not object to the entry of a restitution order to the extent that any of the victims were his *secured* creditors, stating that this restriction is provided for under Ninth Circuit law. *See* Def. Sent. Mem., at 10-11.  He cites no cases for this proposition, however, and the United States is unaware of any Ninth Circuit case clearly restricting restitution in a bankruptcy fraud case to secured creditors. *See United States v. Kubick*, 205 F.3d 1117 (9th Cir. 1999) (ordering

restitution in case involving conspiracy to commit bankruptcy fraud; referring simply to "creditors"); *cf. also United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007) (noting that "actual loss" for purposes of restitution "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully") (brackets and quotation marks omitted).  The defendant does not contest the losses claimed by the creditors in their VISs.  The government submits that the Court may rely on the VISs in calculating restitution (as modified in some instances by the government[1]).  The Ninth Circuit has said that similar kinds of victim submissions are sufficient.  *See United States v. Waknine*, 543 F.3d 546, 557-58 (9th Cir. 2008) (stating that, unless they are "too summary and too conclusory," "victim affidavits will generally provide sufficient, reliable evidence to support a restitution order").

In correspondence with government counsel on December 11, 2019, defense counsel queried whether, for any creditors to be entitled to restitution in this case, they must have also filed a "proof of claim" in the bankruptcy case.  The United States has not had the opportunity to thoroughly research this issue and does not know whether all of the victims who submitted VISs also submitted proofs of claims in the bankruptcy case, or whether they were required to have done so, in light of the fact that the trustee ultimately found no assets to distribute.  Presumably, if the assets at issue had been disclosed to the trustee and became available for distribution, all of the creditors who submitted VISs (and other creditors who have not done so) would have submitted proofs of claim.  Similarly, many creditors may not have filed proofs of claim based on the adage that "you can't squeeze blood from a turnip."  In this case, it turns out that the turnip had about $1.5 million in it.

If the details of restitution remains in dispute and the Court desires additional information, the United States requests that the Court impose sentence on the defendant at the hearing on December 17, 2019, and then set a restitution hearing within 90 days for determination of the amount of restitution to be ordered, pursuant to 18 U.S.C. § 3664(d)(5).

---

[1] Three of the victims – Faria Enterprises LLC (Lisa Faria), Clarke H. Hutchings Living Trust, and UTA DTD 09/20/09 FBO Amir Badrudin Kanji and Zainab Jenny Kanji – claimed different loss amounts than set forth in the table above, but those losses were in connection with an investment in 1500 Broadway, Oakland, California.  These individuals and entities as well as other investors filed suit against Garlock and related entities and obtained a stipulated judgment of $3 million to settle claims related to their investment.  Consequently, the loss amounts used for these victims are based on their estimated share of the lawsuit judgment.

Although the United States is willing to provide additional briefing and evidence to the Court on this issue, it notes that it is very difficult to reconstruct these losses, given the passage of time and the fact that some of the victims no longer are in possession of all of the applicable records.  Furthermore, the government also notes that 18 U.S.C. § 3663A, the Mandatory Victim Restitution Act, requires only that the Court make a finding regarding restitution based on a preponderance of the evidence.  18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.  The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government."); *see also Kubick*, 205 F.3d 1117 (holding that MVRA applies in case involving conspiracy to commit bankruptcy fraud).[2] Here, the government believes that it has met the preponderance standard in showing that Garlock concealed $1.5 million in assets, which should be the amount of the total restitution order.  From that finding, the Court must then calculate each creditor's proportionate share of the total restitution order.  As noted above, the government believes that the Court may do so based on the victim's submissions.

To the extent that the Court believes that dealing with restitution issues will be take an unreasonable amount of time, the restitution statute allows the Court to find that no restitution order should be entered.  *See* 18 U.S.C. § 3663A(c)(3)(B) ("This section shall not apply . . . if the court finds, from facts on the record, that . . . determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process.").  Moreover, the government has yet to identify seizable assets belonging to the defendant that might be used for restitution.  (The Patrol Road house was sold long ago, and the woman who has boarded the horse Patron has essentially described it as old and lame.)

### Sentences in Other Bankruptcy Fraud Cases

The defendant has reviewed cases in this Circuit involving sentences for the crimes of conviction in this case, 18 U.S.C. §§ 152(1) and 152(9).  *See* Def. Sent. Mem., at 10 & Ex. A.  The defendant's

---

[2] *Bussell* did not apply the MVRA in the bankruptcy fraud context.  Although it is unclear from *Bussell*, it is possible that the offense conduct in that case pre-dated the enactment of the MVRA and that is why the court instead applied the Victim and Witness Protection Act, 18 U.S.C. § 3663.

compendium of cases is restricted to those in which the defendant entered a guilty plea.  However, the United States is aware of at least one other case from this District in which the defendant received a significant prison sentence after a guilty plea involving concealment of assets in a bankruptcy case.

Specifically, in *United States v. McVay*, CR 16-0186 LHK, the defendant pleaded guilty pursuant to a plea agreement to one count of fraudulent concealment of assets in a bankruptcy case, in violation of Section 152(1).  *Id.*, docs. 19-20.  At sentencing, the United States recommended a sentence of 52 months for that 68-year-old defendant, where the Guidelines range was 46 to 57 months.  *Id.*, doc. 24.  (The government contended that the loss amount was between $1.5 million and $3.5 million and that the adjusted offense level was 23.  *Id.*)  The court imposed a sentence of 56 months' imprisonment.  *Id.*, doc. 26.  (McVay has recently filed a Section 2255 petition in that case.  *See id.*, docs. 73-75.)[3]

This Court may also look at the sentence in a bankruptcy fraud cases after trial on the merits.  In *United States v. Kuburovich*, CR 16-0373 EJD, the defendant was convicted by a jury in September 2018 of fraudulent concealment of assets in a bankruptcy case and making false statements in a bankruptcy case, in violation of Sections 152(1) and 152(3).  *Id.*, doc. 129.  At sentencing in June of this year, the government argued that the loss was more than $1.5 million (+16 levels), and also argued for an additional eight levels in enhancements.  This resulted in a Guidelines range of 97 to 121 months.  *Id.*, doc. 160.  The government recommended a sentence of 60 months' imprisonment.  *Id.*  The court granted a variance and imposed a sentence of 40 months' imprisonment.  *Id.*, docs. 162 & 164.

Judges in this district have also imposed sentences of 6 months and 8 months, respectively, in bankruptcy fraud cases involving guilty pleas to false statement charges under Section 152(3) and/or

---

[3]  In *McVay*, the government took the position that even though McVay concealed less than $100,000 in assets, the court should calculate Guidelines loss amount based on the amount of debt that he sought to have discharged.  *See McVay*, doc. 24 at 5-6 (citing *United States v. Bussell*, 504 F.3d 956 (9th Cir. 2007)).  On further consideration, the government does not now take such a cramped reading of *Bussell*.  Rather, *Bussell* simply declined to adopt a rule that loss amount in a bankruptcy fraud case should be categorically limited to the value of the concealed assets or the value of the liabilities, whichever is less.  Upon close reading, it seems clear that *Bussell* requires the district court to calculate loss amount based on the facts of each case.  Here, the parties have agreed to calculate loss based on the amount of assets concealed, not the amount of debts discharged.  Given the facts of this case (including that Garlock did not voluntarily enter bankruptcy), the government believes that calculating loss based on the value of the concealed assets is appropriate.  *See also Bussell*, 504 F.3d at 962 ("In the run-of-the-mill cases where the debtor acts alone and his fraudulent activities consist solely of failing to disclose a concealed asset on the bankruptcy petition, limiting intended loss to either the value of the concealed assets or the debt discharged, whichever is less, may well reflect economic realities.").

1   bankruptcy fraud charges under Section 157.  *See United States v. Bonavito*, CR 13-0248 WHA; *United*

2   *States v. Harrell*, CR 13-0090 SI.  (In another case, the court gave probation where the defendant

3   waived indictment and pleaded guilty to making false statements in a bankruptcy case, in violation of

4   Section 152(3).  *See United States v. Dragonetti*, CR 15-0390 WHO, doc. 13.  In that case, both the

5   government and the defendant had recommended 5-month prison sentences.  *See id.*, docs. 10-11.)

6   The government goes into this somewhat-detailed litany of cases only to rebut the implicit

7   suggestion that it is rare or uncommon to impose lengthy (or any) custodial sentences in bankruptcy

8   fraud cases where defendants have pleaded guilty.  Prison sentences are regularly imposed in bankruptcy

9   fraud cases in this District.  No-jail-time sentences are less common than custodial ones.

10  Defense counsel should not be faulted for not discovering *McVay*.  *McVay* and the other cases

11  cited above were known to government counsel, and a Westlaw search does not reveal their existence.

12  **The Genesis of this Prosecution**

13  Garlock suggests that there was some connection between the judgment against him in the

14  *Thomas and Brune* adversary proceeding and the initiation of this investigation.  *See* Def. Sent. Mem., at

15  6-7.  Government counsel is not aware of any such connection.  Even if there were a connection, it is not

16  a relevant sentencing factor, and there is no allegation that the government's initiation of the instant

17  investigation was improper.

18  **Conclusion**

19  For the reasons set forth above and in the United States' prior Sentencing Memorandum, the

20  government continues to recommend a sentence of 30 months' imprisonment, to be followed by a three-

21  year term of supervised release.  The court should also order restitution as set forth above and order the

22  defendant to pay a special assessment of $200.

23  DATED:  December 12, 2019                          Respectfully submitted,

24                                                      DAVID L. ANDERSON
25                                                      United States Attorney

26                                      _____
                                               /s/
27                                      KYLE F. WALDINGER
28                                      Assistant United States Attorney